WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
ANDERS PEDERSEN, Bar No. 11626
anders.pedersen@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ASSOCIATED PRESS; THE MCCLATCHY COMPANY, LLC, dba The Idaho Statesman; and EAST-IDAHO-NEWS.COM, LLC, dba East Idaho News,<br><br>Plaintiffs,<br><br>v.<br><br>JOSH TEWALT, in his official capacity as the Director of the Idaho Department of Correction,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiffs Associated Press, The Idaho Statesman, and East Idaho News ("Plaintiffs") bring causes of action and claims for relief and allege as follows:

## I.  NATURE OF THE ACTION

1. "To determine whether lethal injection executions are fairly and humanely administered, or whether they ever can be, citizens must have reliable information about the 'initial procedures,' which are invasive, possibly painful and may give rise to serious complications. This information is best gathered first-hand or from the media, which

serves as the public's surrogate." *Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868, 876 (9th Cir. 2002) (*CFAC*) (citation omitted).

2. This lawsuit, brought pursuant to 42 U.S.C. § 1983, seeks preliminary and permanent injunctive and declaratory relief in response to violations by the above-named Defendant of the First Amendment to the United States Constitution, incorporated and applied to the states by the Fourteenth Amendment.

3. Plaintiffs seek to prohibit the State of Idaho from engaging in unconstitutional procedures currently followed by the Idaho Department of Correction ("IDOC"), which prevent observation of the entirety of the execution of condemned inmates.

4. Under the current procedures followed by the IDOC, the public, members of the media, and other witnesses are prohibited from viewing any aspects of the execution process that occur in what the IDOC now calls the Medical Team Room.

5. Some of those aspects that will take place in the Medical Team Room include preparing and labeling syringes that will contain the lethal injection drug or drugs; drawing the lethal injection drug or drugs into the prepared syringes; tracking the syringes to ensure they are not damaged or mixed up; monitoring the condemned person through a closed-circuit feed; and monitoring the condemned person's vital signs through an EKG monitor. Team members inside the Medical Team Room are also responsible for administering the lethal injection drugs from the prepared syringes into the IV lines attached to a condemned person.

6. Accordingly, Plaintiffs request this Court enjoin Defendant from restricting access to the Medical Team Room leading up to, during, and immediately after any future executions of condemned individuals.

## II.  PARTIES

7. Plaintiff THE ASSOCIATED PRESS is a New York Corporation with a place of business located in Boise, Ada County, Idaho, and its supervisory correspondent is Rebecca Boone, who is a resident of Boise, Ada County, Idaho.

8. Plaintiff THE MCCLATCHY COMPANY, LLC dba The Idaho Statesman ("Idaho Statesman") is a Delaware limited liability company with journalists located in Boise and throughout Idaho.

9. Plaintiff EAST-IDAHO-NEWS.COM LLC dba East Idaho News ("East Idaho News") is an online news organization based in Idaho Falls, Idaho.

10. Defendant JOSH TEWALT is the director of the IDOC, which is tasked with establishing, designating, and implementing the IDOC execution policies and protocol. He is named in his official capacity only.

## III.  JURISDICTION AND VENUE

11. The Associated Press, the Idaho Statesman and East Idaho News bring this action to enjoin imminent violations of the First Amendment to the United States Constitution.

12. This Court has subject matter jurisdiction over the Plaintiffs' 42 U.S.C. § 1983 claims under 28 U.S.C. § 1331. It has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201-2202 and Fed. R. Civ. P. 65 and 57.

13. Venue is proper in this Court and District, under 28 U.S.C. § 1391(b)(1) and (2), because Defendant is subject to personal jurisdiction in this District and because the events and omissions giving rise to this action will occur, absent judicial relief, within this District.

## IV. FACTUAL ALLEGATIONS

### Background

14. Idaho is one of the 27 states that still use capital punishment. *See* I.C. 19-2716.

15. In total, Idaho has carried out 29 executions since 1864.

16. Although Idaho has not successfully executed a death row inmate in over a decade, it has continued to issue writs of execution and demonstrated that it fully intends carry out the executions of condemned individuals.

17. On February 13, 2024, Idaho attempted to execute Thomas Eugene Creech. During that attempt, execution team members tried eight times to place a viable IV line in Mr. Creech's arms and legs over multiple hours. Eventually, Mr. Creech's execution was halted once the execution team finally determined they could not successfully set an IV line. *Id*.

18. Associated Press supervisory correspondent Rebecca Boone was in attendance at the attempted execution of Mr. Creech as one of the designated media witnesses.

19. Ms. Boone has served as the Associated Press's designated witness for two other completed executions. Ms. Boone witnessed the lethal injection execution of Paul Ezra Rhoades on November 18, 2011, and Richard Albert Leavitt on June 12, 2012.

20. Following Mr. Creech's failed execution, the IDOC decided to renovate F Block of the Idaho Maximum Security Institution, which houses Idaho's Execution Chamber. The renovated "Execution Unit" now includes two witness areas—one for the State's witnesses and one for the condemned prisoner's witnesses—an Execution Chamber, an Execution Preparation Room, and a Medical Team Room. *See* IDOC SOP, [Execution Procedures](), at 13 (Oct. 11, 2024).

21. On October 15, 2024, following the completion of the F Block renovation, the IDOC published a revised Standard Operating Procedures for Executions (SOP). The SOP applies

to all staff members involved in the administration of capital punishment.

22. According to the IDOC, the revisions to the SOP were made to reflect the physical changes to the F Block, revise the qualifications for the medical team, clarify the execution process, and update the IV placement, syringe, and chemical preparation procedure. *Id*.

23. In conjunction with the SOP, the IDOC also released an Execution Chemicals Preparation and Administration document that provided a more detailed set of procedures for the actual execution of a condemned individual. *See* IDOC, Execution Chemicals Preparation and Administration (ECPA), at 4 (Oct. 11, 2024).

24. The day after IDOC released its updated SOP, the State of Idaho issued a second death warrant for Mr. Creech, scheduling his execution for November 13, 2024.

25. Ms. Boone was approved to be one of the media representatives in attendance as the IDOC executed Mr. Creech. *See id*. However, one week before Idaho was scheduled to execute Mr. Creech, the District of Idaho stayed his execution. *See Creech v. Valley*, No. 1:24-cv-00485-GMS, Dkt. 20 (D. Idaho Nov. 6, 2024). There, the district court stayed Creech's execution until it is able to address his underlying habeas petition. As it stands, briefing in that case was due November 29, 2024 and the matter is still pending. *Id.*

26. The IDOC has also sought to execute another condemned individual over the past few years, Gerald Ross Pizzuto. Since May of 2021, Idaho has issued three death warrants for Mr. Pizzuto. *See Pizzuto v. Tewalt*, No. 1:23-CV-00081-BLW, 2023 WL 4901992, at *2 (D. Idaho Aug. 1, 2023). Currently, Mr. Pizzuto's execution is stayed until the Ninth Circuit resolves a pending appeal involving a discovery order compelling the IDOC to provide Mr. Pizzuto with confidential documents. *See Pizzuto v. Tewalt*, No. 1:21-CV-00359-BLW, 2024 WL 3089291, at *4 (D. Idaho June 21, 2024).

27. Idaho's continued practice of issuing writs of execution demonstrates that it fully intends carry out the executions of condemned individuals, including Thomas Creech.

28. Whenever Idaho next attempts to execute Mr. Creech, or any other condemned individual, Ms. Boone intends to be present as a media witness.

29. Like the Associated Press, the Idaho Statesman has had a reporter serve as a media representative at prior executions and intends to seek permission to have a representative on hand at any future executions in Idaho.

30. East Idaho News also intends to cover any future execution through one of its own reporters as a media witness or, alternatively, through other media witnesses.

## Idaho's Current Execution Procedures

31. Under IDOC's new protocols, the execution of a condemned individual begins by securing the individual to a medical gurney. Once secured, the inmate is escorted to the Execution Preparation Room.

32. In the Execution Preparation Room the medical team will determine if it can establish peripheral IV access for a condemned individual. *Id*. If the medical team leader determines peripheral IV access is not attainable, a medical team member will establish a central line. Additionally, the medical team will affix electrocardiograph (EKG) leads on the condemned person in the Execution Preparation Room. *Id*.

33. Once the medical team has established IV access and connected EKG leads, the condemned individual is escorted on a medical gurney to the Execution Chamber. *See IDOC ECPA,* at 5. From there, the medical team leader will attach the EKG leads to the monitor and confirm that the EKG monitor is functioning properly. The team leader will also attach the IV lines to established IV access and ensure they are flowing appropriately. Surprisingly, no lethal

injection drugs are administered in the Execution Chamber. Rather, there is a small opening in the wall of the Execution Chamber where the IV lines pass into the Medical Team Room.

34. Once all the necessary lines are attached, the medical team leader will leave the Execution Chamber and join the rest of the medical team in the Medical Team Room. *See IDOC ECPA,* at 5. From that point forward, it appears that only the Idaho Maximum Security Institute (IMSI) Warden will remain in the Execution Chamber, and the medical team will monitor the condemned individual from a closed-circuit audio and video feed available to them inside the Medical Team Room. *Id*.

35. Members of the medical team carry out several tasks inside the Medical Team Room that are fundamental to the process of executing a condemned person. Those tasks include: preparing and labeling syringes that will contain the lethal injection drugs; drawing the lethal injection drugs into the prepared syringes; tracking the syringes to ensure they are not damaged or mixed up; monitoring the condemned person through a closed-circuit feed; and monitoring the condemned person's vital signs through an EKG monitor. *See id.,* at 5-6. Perhaps most importantly, team members inside the Medical Team Room are responsible for administering the lethal injection drugs from the prepared syringes into the IV lines attached to the condemned person. *See id.,* at 6-9.

36. The medical team will remain in the Medical Team Room throughout the administration of the lethal injection drugs. *See id.,* at 8; *see also* Boone Decl. ¶ 52. Once all the lethal injection drugs are administered and all electrical activity of the condemned individual's heart ceases, the medical team leader will advise the Ada County Coroner that the execution has been completed. At that point, the coroner will examine and pronounce the death of the condemned person. *Id.,* at 8. At that point, all the witnesses will be escorted

out of the witness areas and the execution will be considered completed. *Id.*

### Witness Observation of the Execution Process

37. Under the updated process, witnesses to an execution will be able to see the condemned inmate throughout the execution process. That is, under the current protocols, witnesses to an execution are granted visual and audio access to both the Execution Preparation Room and the Execution Chamber. That does not mean they will be able to see the entire execution process, however.

38. The IDOC has stated that "[a] live, closed-circuit video and audio feed will be available to state and condemned witnesses for the entirety of the time the condemned person is in the execution preparation room." [IDOC updates Execution SOP, Protocols (Oct. 15, 2024)](#).

39. Additionally, the witnesses will be able to view the Execution Chamber through a large clear window.

40. Despite providing witnesses audio and visual access to the Execution Preparation Room and the Execution Chamber for the duration of the execution, the IDOC has refused to provide any form of access to the Medical Team Room.

41. As it stands, anything that happens in the Medical Team Room during an execution will be done in complete secrecy and free from any public scrutiny.

### The Associated Press's Attempt to Gain Access to the Medical Team Room

42. Plaintiff Associated Press's concerns with its access to the Medical Team Room—previously called the "medical room" or "chemical room"—began in 2012, with the execution of Mr. Leavitt.

43. In the years after Mr. Leavitt's execution, the Associated Press made multiple informal requests for access to the Medical Team Room during executions. In 2021, when the IDOC was preparing to execute Mr. Pizzuto, the Associated Press's legal counsel made a formal request for access to the room. In response, the IDOC informed the Associated Press that it had no intention of providing access to the chemical room (as it was called at the time), claiming that it had a penological interest in physically keeping individuals out of the room, and that it did not have a closed-circuit television in place that could be used.

44. Following that response, the Associated Press suggested that a window or closed-circuit cameras could be installed in the chemical room to provide visual and audio to the media witnesses. Boone Decl. ¶ 43. The IDOC did not respond to the suggestion, and it appears no window or closed-circuit feed was added during the recent renovation. *Id.* ¶ 47. Currently, the IDOC has no intention of providing access to the Medical Team Room for any future executions. *Id.* ¶ 48.

**Delegation of Authority to the IDOC to Enforce and Dictate Execution Procedures**

45. Effective March 31, 1982, the Idaho State Legislature enacted Idaho Code § 19-2716, a statute that prescribes lethal injection as the primary method of execution, subject to exceptions that warrant death by firing squad.

46. The statute provides that the "punishment of death shall be inflicted by . . . [c]ontinuous, intravenous administration of a lethal quantity of a substance or substances approved by the director of the Idaho department of correction." I.C. § 19-2716(1)(a).

47. Idaho expressly delegates the authority to determine the exact substance or combination of substances to be employed to the Director of the IDOC to determine the procedures appropriate for all executions. I.C. § 19-2716(6).

48. In creating, maintaining, and implementing the practice, procedure, protocol, and policy of preventing witnesses' uninhibited and uninterrupted observation of the execution process in its entirety, Defendant at all times relevant hereto has acted, and continues to act, under the color and authority of state law.

### The Public's Right Under the Constitution

49. The First Amendment guarantees a qualified right of access to governmental proceedings. *CFAC*, 299 F.3d at 873. That right of access extends not only to the general public, but to the press. *Id*. at 873 n.2.

50. This constitutional right of public access attaches specifically where (1) certain government proceedings or records historically have been open to the public, and (2) public access to these proceedings or records plays a significant positive role in the functioning of government. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986).

51. As the Ninth Circuit Court found in *California First Amendment Coalition v. Woodford,* the tradition of public executions in the United States originates with England, where for centuries public executions were routine, commonplace, and surrounded by fanfare. 299 F.3d at 871. Despite the gradual abolition of public executions by moving the practice behind prison walls, this heritage survived in many jurisdictions of the United States until the very last public execution in 1937.

52. Though the abolition of public executions changed the forum associated with the practice, statutory and procedural provisions preserved a high degree of public access to executions. States sought to guarantee the transparency of the execution process by statutorily requiring the presence of witnesses to view the event. In essence, these witnesses were intended to serve as representatives of the broader public. The press quite naturally assumed the role of a proxy or surrogate for the interests of the public as a safeguard to maintain the integrity and humanity of the execution process.

53. The Ninth Circuit has rejected the attempt to narrowly define the historical public access to execution procedures to only the condemned individual at the exact time an execution was carried out. Rather the Ninth Circuit found that the public generally had access to the *entirety* of the execution, which includes those procedures "inextricably intertwined" with the execution process. *Id.* at 876.

54. As the Ninth Circuit has explained, "[i]ndependent public scrutiny—made possible by the public and media witnesses to an execution—plays a significant role in the proper functioning of capital punishment." *CFAC*, 299 F.3d at 876. "To determine whether lethal injection executions are fairly and humanely administered, or whether they ever can be, citizens must have reliable information about" how a state carries out its capital punishment. *Id*.

55. Based on the historical access to the public and press and the positive role that access serves in the proper functioning of capital punishment, the Ninth Circuit has held "in the clearest possible terms" that "'the public enjoys a First Amendment right to view executions from the moment the condemned is escorted into the execution chamber, including those "initial procedures" that are inextricably intertwined with the process of

putting the condemned inmate to death.'" *Associated Press v. Otter*, 682 F.3d 821, 822 (9th Cir. 2012) (quoting *CFAC,* 299 F.3d at 877).

### V. CLAIM FOR RELIEF

**VIOLATION OF THE PLAINTIFFS' FIRST AMENDMENT RIGHT OF ACCESS TO GOVERNMENTAL PROCEEDINGS**

56. Plaintiffs incorporate by reference all preceding paragraphs as if set forth herein and further allege as follows:

57. The IDOC's practice, procedure, protocol, and policy prevent execution witnesses from observing the entirety of the execution process both visually and audibly, so that the purpose behind witnesses' attendance at executions is severely impaired. The IDOC excludes witnesses from observing fundamental aspects of the execution process that occur within the Medical Team Room in violation of the First Amendment. Those aspects include, but are not limited to, preparing and labeling syringes that will contain the lethal injection drug or drugs; drawing the lethal injection drug or drugs into the prepared syringes; tracking the syringes to ensure they are not damaged or mixed up; monitoring the condemned person through a closed-circuit feed; monitoring the condemned person's vital signs through an EKG monitor; and ultimately administering the lethal injection drugs from the prepared syringes into the IV lines attached to the condemned individual.

58. To clarify, Plaintiffs do not seek specific access to information regarding the type of lethal injection drugs, their manufacturer, or the exact dosages used, or that the right of access would include such information. Rather, the public's right of access to witness executions in their entirety encompasses the actions taken in the medical team room. Accordingly, Plaintiffs are seeking access to that room akin to what is provided through

the closed-circuit feed in the Execution Preparation Room or the window in the Execution Chamber.

59. Under 42 U.S.C. § 1983, Plaintiffs are entitled to preliminary and permanent injunctive relief prohibiting Defendant from violating its First Amendment rights, privileges, or immunities under federal law.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for entry of judgment as follows:

60. Declare the Defendant's practice, custom, and policy of preventing witnesses to an execution from viewing the entire execution process, specifically prohibiting access to the Medical Team Room, violate the First Amendment to the United States Constitution.

61. Issue preliminary and permanent injunctive relief prohibiting the Defendant from restricting the witnesses to an execution from viewing and hearing what occurs in the Medical Team Room leading up to, during, and immediately after any future executions of condemned individuals. Specifically, Plaintiffs seek access akin to that provided in the Execution Preparation Room and/or the Execution Chamber.

62. Award Plaintiff's costs of suit and reasonable attorneys' fees and other expenses under 42 U.S.C. § 1988.

63. Grant such additional relief as the interests of justice may require.

DATED: December 6, 2024				STOEL RIVES LLP

/s/ Wendy J. Olson
Wendy J. Olson
Anders Pedersen

*Attorneys for Plaintiffs The Associated Press, The Idaho Statesman, East Idaho News*

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 14
126761952.5 0012094-00006