RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110, Boise, Idaho 83706
Telephone: (208) 658-2094; Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov; krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756, Boise, Idaho 83707
Telephone: (208) 336-6900; Facsimile: (208) 336-7031
mje@melawfirm.net; tanner@melawfirm.net

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE ASSOCIATED PRESS et al., | Case No. 1:24-cv-00587-DKG |
| Plaintiff, | **RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| vs. | **[Dkt. 2]** |
| JOSH TEWALT, | |
| Defendant. | |

COME NOW Defendant, by and through undersigned counsel, and hereby submits his Response in Opposition to Motion for Preliminary Injunction as follows:

### INTRODUCTION

Plaintiffs seek to enjoin IDOC from executing anyone unless and until IDOC renovates F Block to provide them unprecedented access to its Chemical Room. Plaintiffs' Motion is premised

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 1**

on two Ninth Circuit cases which found a right of access of the public to view and hear a con-demned inmate in the execution chamber during executions. IDOC's policies comply with these cases. Indeed, while Plaintiffs pull quotes from those cases discussing "entirety of the execution," Plaintiffs fail to discuss the qualifiers clearly articulated by the Ninth Circuit which cabin the scope of this right of access to the condemned and the chamber. Plaintiffs also base their Motion on an Arizona District Court case which extended the Ninth Circuit cases by finding a right to know when chemical is being administered. IDOC's policies comply with that case as well.

Without a basis in law, then, Plaintiffs also argue that the Court should make a preliminary determination that they are likely to succeed in creating a new right under the First Amendment by further extending the "history and logic" test in unprecedented ways. But Plaintiffs' claim fails because there is not a history of access to places like the Chemical Room, all the logical consider-ations utilized by the Ninth Circuit are satisfied under IDOC's current procedures, and Plaintiffs have not presented any evidence to support their claim. But even if Plaintiffs convince the Court that they are likely to succeed, their Motion should be denied because Plaintiffs won't be irrepa-rably harmed absent an injunction and the equitable and public interests weigh heavily against preliminary relief. Defendants respectfully request that the Court deny Plaintiffs' Motion.

## LEGAL STANDARD

The standards governing temporary restraining orders are the same as those for preliminary injunctions. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc*., 240 F.3d 832, 839 n. 7 (9th Cir. 2001)). Both are "extraordinary remed[ies] that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dawson v. Asher*, 447 F. Supp. 3d 1047, 1049 (W.D. Wash. 2020) (quoting *Winter v. Nat. Resources Def. Council, Inc*., 555 U.S. 7, 24 (2008)). A prohibitory injunction preserves the status quo pending the case by prohibiting a party from

taking action. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co*., 571 F.3d 873, 878 (9th Cir. 2009). Mandatory injunctions go beyond maintaining the status quo, are "particularly disfavored," and are "not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (citing *Anderson v. U.S.*, 612 F.2d at 1114). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter*, 555 U.S. at 24. The movant's burden is "much higher" than a litigant asking for summary judgment, and is not warranted "unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original).

## INCORPORATION OF MOTION TO DISMISS

The points and authorities raised in Defendant's Motion to Dismiss and supporting materials are directly on point to Plaintiffs' Motion and largely disprove their claims. Defendant incorporates by reference the arguments and authorities set forth in their Memorandum in Support of Motion to Dismiss.

## ARGUMENT

**1.  Plaintiffs' Motion should be denied because it concerns pure political questions.**

Regulating access to state penitentiaries is a matter for state legislatures. *Holden v. State of Minnesota*, 137 U.S. 483, 491 (1890). This concept of non-justiciability over prison access has been reaffirmed by the Supreme Court since *Holden*. For example, in *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), the Supreme Court again explained that regulating access to prisons is "clearly a legislative task which the Constitution has left to the political processes." 438 U.S. at 13; *see*

*also id.* at 12, 15–16. Then in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), the Court again set forth this concept on non-justiciability when differentiating the facts of that case (involving access to courts) from cases such as *Pell v. Procunier*, 417 U.S. 817 (1974), and *Saxbe v. Washington Post Co.*, 417 U.S. 843 (1974), which involved access to prisons. 448 U.S. at 576 n. 11. The *Richmond News* Court explained that penal institutions do not have a "long tradition of openness, although traditionally there have been visiting committees of citizens, and there is no doubt that legislative committees could exercise plenary oversight and 'visitation rights.'" *Id.* The *Richmond News* Court also noted that it previously upheld the public's restriction on prison access under the "truism that prisons are institutions where public access is generally limited." *Id.* The matters raised in Plaintiffs' Complaint and present Motion are beyond the confines of the Court's Article III jurisdiction because they involve pure political questions.

Further, Idaho has constitutionally and legislatively committed prison access determinations to the Executive Department through IDOC's Director. Article 10, Section 5 of the Idaho Constitution provides that the Board of Correction "shall have the control, direction and management of the penitentiaries of the state, their employees and properties, and of adult felony probation and parole, with such compensation, powers, and duties as may be prescribed by law." IDAHO CONST. Art. X, § 5. The Legislature codified that IDOC's Director "shall determine the procedures to be used in any execution." I.C. § 19-2716(6).

Because Plaintiffs' claim concerns pure political questions, the Court lacks jurisdiction over this action. Accordingly, the Court should deny Plaintiffs' Motion.

**2.  The Court should also deny Plaintiffs' Motion because their claim is not ripe.**

Plaintiffs' claim is not ripe because there is no execution scheduled. This is undisputed. Further, the two IDOC inmates who are in line to be executed have stays of execution currently in

place. This is also undisputed. (Dkt. 1, ¶¶ 25–26). And Plaintiffs' attendance at an upcoming execution is not guaranteed. IDOC allows a maximum of four media representative witnesses. (Dkt. 11-1, pp. 32–33). This is subject to change by Director Tewalt. Any news representative who wants to be a witness must apply to attend, undergo a criminal background check, and receive approval from IDOC. This application occurs fourteen days before a scheduled execution. And while the Associated Press is designated one witness, the other three are subject to a lottery; all of which are still subject to the Director's discretion. Plaintiffs' claims are too speculative and contingent on too many variables to be considered ripe. *See Texas v. U.S.*, 523 U.S. 296, 300 (1998) (claim is not ripe if contingent on future events). The Court should deny Plaintiffs' Motion.

**3. The Court should deny Plaintiffs' Motion because they are unlikely to succeed on the merits even under the rights identified by the Ninth Circuit.**

The Supreme Court has never found a First Amendment right of access to executions and has indicated that no such right exists. *See Holden*, 137 U.S. at 491 (state can constitutionally limit number and character of witnesses, or exclude witnesses altogether); *Houchins*, 438 U.S. at 7–17 (neither First nor Fourteenth Amendments provide right of access to government information and the press has no greater access than general public); *Richmond Newspapers*, 448 U.S. at 576 n. 11 (penal institutions are not open or public places, in contrast to courts, and states can exercise plenary oversight and visitation rights); *Pell*, 417 U.S. at 829–35 (upholding limitation on press to interview inmates because the public is not afforded such access); *Saxbe*, 417 U.S. at 849–850 (upholding limitation on interviewing inmates because "prisons are institutions where public access is generally limited.").

The Ninth Circuit, however, found a First Amendment right to see and hear an inmate in the execution chamber in *California First Amend. Coalition v. Woodford*, 299 F.3d 868 (9th Cir. 2002), and *First Amend. Coal. of Arizona, Inc. v. Ryan*, 938 F.3d 1069 (9th Cir. 2019). These cases

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 5**

are the bases of Plaintiffs' lawsuit. But even if the Ninth Circuit was correct in finding these rights, which are irreconcilable with Supreme Court precedent, Plaintiffs are not entitled to any relief here because neither of those cases, nor the Arizona or California district court cases Plaintiff also cites, stand for the proposition Plaintiffs seek here—access to executions beyond the inmate in the execution chamber—and IDOC's policies comply with all of those cases.

Before analyzing *Woodford* and *Ryan*, it is helpful to evaluate *California First Amend. Coalition v. Calderon*, 150 F.3d 976 (9th Cir. 1998), which addressed the same issues shortly beforehand and declined to find a right of access to executions. The *Calderon* court was tasked with determining whether California's protocol violated the First Amendment. California's protocol prevented witnesses from seeing the execution team in the chamber, or the condemned while he was brought into the chamber, strapped to the gurney, inserted with IVs, or while he waited alone; witnesses would be able to view shortly before the administration of chemical. *Id.* at 979. The Ninth Circuit determined that this did not violate whatever rights the First Amendment provided. In doing so, the Ninth Circuit evaluated cases such as *Pell*, *Houchins*, and *Saxbe*, and explained that the Supreme Court in those cases determined that a policy affecting access to prisons does not violate the First Amendment so long as they do not "deny the press access to sources of information available to members of the general public." *Id.* at 981. The *Calderon* court also analyzed *Richmond Newspapers*, *Globe Newsp. Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596 (1982), *Press-Enter. Co. v. Super. Ct. of California, Riverside Cnty.* ("*Press-Enter. I*"), 464 U.S. 501 (1984), and *Press-Enter. Co. v. Super. Ct. of California for Riverside Cnty.* ("*Press-Enter. II*"), 478 U.S. 1 (1986), for the "history and logic" exception found by the Supreme Court in the context of access to the criminal adjudicatory process, and rejected that exception's application for executions. *Id.* at 981–82. In doing so, the *Calderon* court noted that "the only case in which the Supreme Court

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 6**

discussed a state's restrictions on media or public access to executions, the Court upheld a total ban on both," discussing *Holden*, and that if the First Amendment provides a right to access executions, "the 'right' is severely limited." *Id.* at 982. The *Calderon* court concluded that because the press was given the same access as the public and any "minimization" of access was not an exaggerated response to safety, the First Amendment was not implicated. *Id.* at 982–83.

In *Woodford*, 299 F.3d 868, the Ninth Circuit made the unprecedented step of finding a "right to view the condemned as he enters the execution chamber, is forcibly restrained and fitted with the apparatus of death." 299 F.3d at 877. At issue in *Woodford* was California's policy of "obscur[ing] the witnesses' view of the execution chamber" in a similar manner as *Calderon*. 299 F.3d at 871. Witnesses were only provided visual access of the condemned after he was secured to the gurney in the chamber and inserted with IVs. Witnesses could not see the medical team in the chamber. Shortly before chemical was administered, the chamber's curtains were opened, and witnesses could view from then on. The *Woodford* court extended Supreme Court cases in ways subsequently determined faulty by other courts, *e.g., Oklahoma Observer v. Patton*, 73 F. Supp. 3d 1318 (W.D. Okla. 2014), *Arkansas Times, Inc. v. Norris*, No. 5:07CV00195 SWW, 2008 WL 110853 (E.D. Ark. Jan. 7, 2008), to find a right of visual access to the condemned when he is in the chamber.

In *Ryan*, 938 F.3d 1069, the court evaluated Arizona's execution protocol which prevented audio access to the execution chamber after the prisoner was hooked up to the equipment and throughout the actual execution; other than for short blips where witnesses were provided consciousness updates. The *Ryan* court again extended Supreme Court cases in a manner that courts have since disagreed with, *see BH Media Group, Inc. v. Clarke*, 466 F. Supp. 3d 653, 662 (E.D. Va. 2020), *vacated and remanded on other grounds*, 851 Fed. Appx. 368 (4th Cir. 2021)

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 7**

(unpublished), and found a right to hear the inmate in the chamber while he was put to death. *Id.* at 1075.

Importantly, *Woodford* and *Ryan* do not extend beyond the walls of the execution chamber. *See UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1293 (11th Cir. 2014) (stating the foundational maxim, "holdings of a prior decision can reach only as far as the facts and circumstances presented to the Court in the case which produced that decision."). The Ninth Circuit has never extended the principles in *Woodford* or *Ryan* to areas of penal institutions beyond the chamber, and certainly never beyond access to the condemned.

Further, the Ninth Circuit has been clear that whatever access it believes the First Amendment requires, it is not access to every happening at an execution.[1] The Ninth Circuit articulated that whatever the right is, it is "severely limited," *Calderon*, 150 F.3d at 982, does not include a right to examine executions "in minute detail," *Ryan*, 938 F.3d at 1079, and does not include access to "all information that is 'inextricably intertwined' with executions." *Id*. And the Ninth Circuit explained that this right does not "change the default rule that the right of access 'does not extend to every piece of information that conceivably relates to a governmental proceeding.'" *Id.* at 1079–80 (quoting *Wood v. Ryan*, 759 F.3d 1076, 1092 (9th Cir. 2014) (Bybee, J., dissenting)). Contrary to Plaintiffs' claims, the Ninth Circuit has never held that witnesses are entitled to see everything related to executions.

Plaintiffs are not entitled to a preliminary injunction because IDOC's policies comply with *Woodford* and *Ryan*. To start, while IDOC uses the same Chemical Room setup as it did when the Ninth Circuit analyzed its processes in *Associated Press v. Otter*, 682 F.3d 821 (9th Cir. 2012),

---

[1] Plaintiffs' Motion is silent on these limitations and misconstrues the scope of the limited right found by the Ninth Circuit as a result.

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 8**

IDOC updated witness access years ago to comply with *Ryan* and *Woodford* by providing audio and visual access. Under the current protocol, witnesses have full access to the condemned and the chamber. Initially, IDOC's process is split up into two rooms (the Preparation Room and the Execution Chamber); witnesses therefore see the inmate via a closed-circuit television system which provides visual and auditory access in the Preparation Room. After IVs are inserted in the Preparation Room, the inmate is taken via gurney to the Execution Chamber where witnesses then have direct visual access and auditory access via a microphone and speaker system. Witnesses can see and hear the inmate in the Chamber during the entirety of the execution. Further, witnesses are notified verbally when chemical is being administered. The press is given the same access as the public. IDOC's processes comply with *Woodford* and *Ryan*. Even if those cases were correctly decided, there is no precedential basis Plaintiffs can rely on to force IDOC to change its processes. Plaintiffs are not likely to succeed on their claim.

Plaintiffs' reliance on *Guardian News & Media LLC v. Ryan*, 225 F. Supp. 3d 859 (D. Ariz. 2016), is misplaced. Plaintiffs misconstrue what the *Guardian News* court actually enjoined when claiming that the court enjoined the state from carrying out an execution "without providing a means for the witnesses to be aware of the events taking place in the chemical room." (Dkt. 2-1, p. 17). That is not what the court enjoined and not what the case stands for. As relevant, the court only enjoined the state "from conducting lethal injection executions without providing a means for witnesses to be aware of the administration(s) of lethal drugs …." 225 F. Supp. 3d at 870. This injunction was premised on the earlier mishaps experienced in Arizona. Regardless, IDOC's processes comply with the *Guardian News* injunction because witnesses are verbally alerted when chemical is being administered. Thus, even if *Guardian News* correctly analyzed the First Amendment, IDOC complies with whatever the Constitution requires.

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 9**

Plaintiffs' reliance on *Los Angeles Times Commun., LLC v. Kernan*, No. 18-cv-02146-RS, 2018 WL 10419787 (N.D. Cal. Aug. 17, 2018), is also misplaced. That case evaluated a motion to dismiss not a motion for preliminary injunction—which is an exponentially different bar—and was premised on facts taken at face value as alleged by the plaintiff. The *Kernan* court did not express that the plaintiffs' claim had merit, just that their claims may be cognizable under a liberal Rule 8 view. Indeed, the *Kernan* court noted that case authority has only found "historical access to executions starting from the moment the condemned is brought before the public," and that "[n]o cases in this Circuit have extended [*Woodford*] or opined on the right of access to the specific portions of the execution process sought [t]here." 2018 WL 10419787, at *3. The *Kernan* court never got to the merits of the claims because California's governor imposed a moratorium on the death penalty. *See* N.D. Cal. Case No. 18-cv-02146-RS, Dkt. 46. *Kernan* does not support Plaintiffs' position, but indeed undercuts it under a Rule 65 analysis because it shows that Plaintiffs' position is a novel extension of the law that has never been recognized meritoriously by any court.

Plaintiffs also misconstrue what the Ninth Circuit meant when saying that the right provides access to executions in their "entirety." *Ryan*, F.3d at 1075. While Plaintiffs would like to convince the Court that this includes access to every conceivable matter related to executions, that is not the case. This is demonstrated by the Ninth Circuit's limiting instructions (which Plaintiffs' papers are silent on) qualifying the rights as being "severely limited," not providing access to examine executions in "minute detail," not providing access to "all information that is 'inextricably intertwined' with executions," and "not extend[ing] to every piece of information that conceivably relates to a governmental proceeding." *Calderon*, 150 F.3d at 982; *Ryan*, 938 F.3d at 1079–80. Further, the *Woodford* court clearly articulated that access to the entirety of an execution, including the "initial execution procedures," only means access to the condemned in the chamber. 299 F.3d

at 876. The *Woodford* court explained: (1) witnesses historically saw the inmate "enter the execution place, be attached to the execution device and then die"; (2) witnesses watched hangings "in their entirety, from the condemned's ascent up the gallows to the fall of the trap door"; (3) witnesses watched lethal gas executions "from the time the condemned was escorted into the gas chamber until pronouncement of death"; and (4) its historical analysis "supports" a right "to view the condemned as the guards escort him into the chamber, strap him to the gurney and insert the intravenous lines." 299 F.3d at 876. Thus, the Ninth Circuit's analysis, at most, only supports a right of access to the chamber. Indeed, at the time of *Otter*, IDOC's process included the same type of Chemical Room setup that is being challenged here. But the Ninth Circuit did not require access to the Chemical Room or anything beyond the walls of the execution chamber when making its ruling there. Indeed, by rejecting the *Ryan* plaintiffs' request for similar ancillary information (such as the ability to view things related to the chemical and medical team), the Ninth Circuit indicated that Plaintiffs here are not entitled to what they claim. *See Ryan*, 938 F.3d at 1079–80.

Furthermore, Plaintiffs' Motion fundamentally fails because they have not identified any history of access to the execution team in rooms other than the chamber, they have not shown a proven history of watching executioners prepare, nor have they shown a history of allowing access to parts of penal institutions beyond the execution chamber. Federal Rule 7 requires motions to "state with particularity the grounds for seeking the order," and Local Rule 7.1 requires the moving party's brief to contain "all of the reasons and points and authorities relied upon by the moving party." Fed. R. Civ. P. 7(b)(1); Dist. Loc. R. 7(b)(1). Plaintiffs have simply taken the Ninth Circuit's analysis out of context and contorted its historical analysis to try and claim that there is somehow a history of access to what Plaintiffs seek here. (Dkt. 2-1, pp. 18–19). Plaintiffs' claims are not based in fact, and they have not cited to or provided anything to substantiate their claims.

Because Plaintiffs have not established a history or tradition of access to chemical rooms or the like, their motion fails and should be denied. *See, e.g., Creech v. Tewalt*, 84 F.4th 777, 789–90 (9th Cir. 2023) (denying claimed First Amendment right of access to execution related material, in part, because plaintiff failed to show history of such access).

Plaintiffs are not entitled to a preliminary injunction because there is not a First Amendment right of access to the things they seek. The Court should deny their Motion.

*3.1. Notwithstanding, even if the First Amendment required access to the medical room, IDOC's processes satisfy unitary, deferential review.*

The *Woodford* court determined that whatever access the First Amendment requires, it can be overcome if the regulation is "reasonably related to legitimate penological objectives" instead of representing "an exaggerated response to those concerns." 299 F.3d at 878. The four *Turner* factors dictate whether the right was violated:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally and (4) whether there exist ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Id.* (quoting *Turner*, 482 U.S. at 89–91, cleaned up).

The first factor is satisfied because access to the Chemical Room is not constitutionally required, not having such access ensures the privacy of the medical team and keeps the equipment providers' identities confidential (which IDOC is now statutorily required to do, I.C. § 19-2716A[2]), ensures the safety of all of those involved in the process, and not requiring renovations

---

[2] Idaho Code § 19-2716A was amended in 2022 and now requires IDOC to keep all identities of those involved in the planning, training, or performance of an execution (including people and companies) confidential.

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 12**

reduces taxpayer expenses because IDOC is not required to renovate F Block to equip it with additional cameras and microphones. Further, the current system allows the Medical Team to work in the safest way possible because they do not have to worry about their identities being uncovered and it allows them to work without identity-protecting equipment. As the Supreme Court has already recognized, anti-death penalty advocates have a proven history of tracking down those involved in the process and aggressively harassing them—sometimes with genuine death threats. *See Glossip v. Gross*, 576 U.S. 863, 869-71 (2015) (explaining the vigorous lobbying by death penalty opponents to make execution drugs unavailable); *see also Zink v. Lombardi*, 783 F.3d 1089, 1106 (8th Cir. 2015) (noting that one of the objectives of death penalty litigation is to pressure those involved in the process); *Jordan v. Commr., Mississippi Dept. of Corrections*, 947 F.3d 1322, 1341 (11th Cir. 2020) (confidentiality is required to carry out death penalty); *McGehee v. Texas Dept. of Crim. J.*, No. MC H-18-1546, 2018 WL 3996956, at *7 (S.D. Tex. Aug. 21, 2018) (owner of company whose products were used in execution received death threats for the company's involvement). Indeed, these pressures are what necessitated the Idaho Legislature to enact its confidentiality statute, I.C. § 19-2716A; the absence of such confidentiality, the Legislature explained, "renders the currently approved means of administering the death penalty impossible to carry out." *See* https://legislature.idaho.gov/wp-content/uploads/sessioninfo/2022/legislation/H0633SOP.pdf. Particularly where it is the press who seek unprecedented access to the Medical Team and the Chemical Room, these concerns are heightened.

The other factors are also satisfied because the Constitution does not require the access Plaintiffs seek, no court has ever recognized the right Plaintiffs claim, and IDOC already goes above-and-beyond whatever the Constitution requires. Witnesses will have full access to the condemned during executions. Further, IDOC's current processes require full documentation of the

administration of chemical and "[a]ny deviation from the written procedure must be noted and explained[.]" (Dkt. 11-1, pp. 62–63). And IDOC notifies witnesses via verbal communication when chemical is administered. Thus, Plaintiffs' constitutional rights, if any, are not infringed, there are alternative means to know what happens in the Chemical Room, and providing Plaintiffs their relief will result in the unneeded expenditure of governmental resources.

IDOC complies with whatever the First Amendment requires, and its processes otherwise satisfy unitary, deferential review. Plaintiffs' Motion should be denied.

### 4.  Plaintiffs failed to show a likelihood of creating a new First Amendment right.

Plaintiffs argue that if the Court recognizes that the cases they rely on do not extend access beyond the chamber, that the Court should grant them a preliminary injunction by finding a likelihood of success in creating a new First Amendment right. But "[o]ne cannot credibly establish a likelihood of success in attacking a death-penalty procedure when the theory of success has yet to succeed in a considerable number of cases over a considerable number of years." *Workman v. Bredesen*, 486 F.3d 896, 906 (6th Cir. 2007). Regardless, Plaintiffs' argument fails.

Plaintiffs rely on the *Press-Enter. II* history and logic test which the Ninth Circuit extended in *Woodford* to find the right to access executions. This test asks: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enter. II*, 478 U.S. at 8–9. Plaintiffs argue that the Court should extend the Supreme Court's experience and logic test to create their desired First Amendment right. As discussed in Defendant's Motion to Dismiss materials, though, extending that test here would be in error because it only applies to cases concerning access to adjudications, which executions are not part of. And even if the Ninth Circuit properly applied that test in *Woodford* or *Ryan*, it is evident that it does not apply to this

context because the Ninth Circuit did not require access to the Medical Room in *Otter*—even though the same Medical Room setup was utilized then.

*4.1. Notwithstanding, Plaintiffs failed to establish a historical tradition of access.*

Plaintiffs have not presented any evidence or authority to support a historical tradition of access to places such as the Chemical Room or people like the Medical Team. Instead, Plaintiffs simply point to the Ninth Circuit's discussion in *Woodford* and *Ryan*, along with a district court case, *Schad v. Brewer*, No. CV-13-2001-PHX-ROS, 2013 WL 5551668 (D. Ariz. Oct. 7, 2013). But none of those cases discuss a historical tradition of access to things akin to what Plaintiffs seek here. This has been observed by at least one court in the Ninth Circuit. *See Kernan*, 2018 WL 10419787, at *3 (explaining that Ninth Circuit authorities only found historical access beginning at the time the "condemned is brought before the public"). Indeed, Plaintiffs' reliance on *Schad* is entirely inapposite because that case simply said that witnesses knew how an inmate was executed (i.e., by hanging, gas, or electric shock) because it would be apparent when watching an execution. *Id.* at *4–5. That is not at issue here because witnesses know lethal injection is being used. Besides citing to these three cases, Plaintiffs have not pointed to any other basis to support their claim. Because Plaintiffs failed to present sufficient evidence or authorities for their claim, it fails under Rule 7 and should be dismissed. *See also Creech*, 84 F.4th 789–90 (dismissing similar claim for lack of historical evidence).

Further, Supreme Court precedent establishes that Plaintiffs' claimed right of access has not historically been experienced. The Supreme Court has explained that penal institutions are not open or public and that prisons can exercise plenary oversight and visitation regulations. *Richmond Newspapers*, 448 U.S. at 576 n. 11; *Houchins*, 438 U.S. at 8–16.

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 15**

Plaintiffs are not likely to succeed on creating a new First Amendment right. Plaintiffs'
Motion should be denied.

### 4.2. Plaintiffs failed to establish a functional importance to the access they seek.

Plaintiffs failed to present evidence on the second prong of this test. Instead, they again
rely on the analysis from *Woodford* and *Ryan*. Plaintiffs contort the public importance discussed in
those cases. The public importance, if any, is confined to watching the condemned to see if he is
experiencing signs of unconstitutional pain. There is no corresponding public importance in watch-
ing the Medical Team in the Chemical Room. Plaintiffs' Motion fails under Rule 7.

Indeed, the cases discussing the actual context of the history and logic test show that the
access Plaintiffs seek here is outside the First Amendment's scope. The history and logic test was
used to find a right of access to criminal adjudications. There is not, however, a right to install
cameras and microphones in court chambers with feeds to the press. This is akin to what Plaintiffs
seek here. Further, the Ninth Circuit has described the right to access court proceedings as being
"no more than a right to attend the trial and report on their observations." *Radio and TV News
Ass'n of S. California v. U.S. Dist. Ct. for Cent. Dist. of California*, 781 F.2d 1443, 1447 (9th Cir.
1986). Indeed, the Supreme Court has held that there is not a First Amendment right to access
exhibits displayed in court but kept in the custody of the court clerk. *Nixon v. Warner Commun.,
Inc.*, 435 U.S. 589, 609 (1978). And the Ninth Circuit in *Ryan* explained that it has never found a
right to access judicial conference notes or all documents within a prosecutor's office, and that the
Supreme Court has indicated such rights do not exist. 938 F.3d at 1079. The Supreme Court has
been clear: while the public can see the happenings inside a courtroom, "the line is drawn at the
courthouse door." *Nixon*, 435 U.S. at 609. In the execution context, then, the line is drawn at the
condemned and the execution chamber.

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 16**

And while Plaintiffs claim an importance in being able to tell the public the "speed, manner, and care" of the execution, they can do that under the current procedures. SOP 135 and the Execution Chemical Preparation protocols describe in detail how the chemical is administered and the procedures the Medical Team follows. The procedures also require full documentation of the administration of chemical and complete documentation if there are any deviations from the protocols. (*See* Dkt. 11-1, pp. 62–63). Further, because IDOC provides verbal notifications when chemical is administered, all the concerns Plaintiffs raise are not actually at issue. Plaintiffs are provided full access to the condemned and can adequately inform the public about the execution. In fact, this cannot be controverted because of the press's reporting of Thomas Creech's February 28, 2024, execution attempt.

Plaintiffs' claim is also premised on an unsupported contention that IDOC may not follow its own protocols. (Dkt. 2-1, p. 20). Plaintiffs' claim is contrary to the stated directive in SOP 135, Dkt. 11-1, p. 57, and the good faith presumed on IDOC. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011) ("[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."). Regardless, if there is an unforeseen deviation, it must be fully documented and explained for. (Dkt. 11-1, p. 63).

Plaintiffs' Motion should be denied because they are not likely to create a new right.

**5. Plaintiffs' claims also fail because *Woodford* and its progeny are not binding on this Court because they are irreconcilable with Supreme Court precedent.**

The Court is not bound by Ninth Circuit precedent that is clearly irreconcilable with Supreme Court precedent. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). The Supreme Court has never found a First Amendment right of access to executions and has indicated that no such

right exists. *See Holden*, 137 U.S. at 491; *Houchins*, 438 U.S. at 7–17; *Richmond Newspapers*, 448 U.S. at 576 n. 11; *Pell*, 417 U.S. at 829–35; *Saxbe*, 417 U.S. at 849–850. Even so, the Ninth Circuit found a First Amendment right to view and hear an execution. However, since the Ninth Circuit issued *Woodford* and *Ryan*, multiple courts have analyzed the Ninth Circuit's reasoning and concluded it was in error and contrary to Supreme Court precedent. *See BH Media Group*, 466 F. Supp. 3d at 662–66 (detailing the error in the Ninth Circuit's analysis, finding no support in Supreme Court precedent for such a right, and concluding that no such right exists); *Arkansas Times,* , 2008 WL 110853, at *2–5 (E.D. Ark. Jan. 7, 2008) (disagreeing with the Ninth Circuit that any such right exists); *Oklahoma Observer v. Patton*, 73 F. Supp. 3d 1318 (W.D. Okla. 2014) (concluding that no such right exists). No circuit court besides the Ninth Circuit has ever found the right created in *Woodford* and *Ryan*.

The Ninth Circuit's analysis centers around extending the *Press-Enter. II* test beyond the adjudication process and bringing it into the execution context. But the Supreme Court has limited that test to "criminal proceedings" and indicated that it cannot apply to circumstances beyond the entry of judgment. *Press-Enter II*, 478 U.S. at 8, 12; *accord Oklahoma Observer*, 73 F. Supp. 3d at 1324. Further, the Supreme Court, in discussing the test, has differentiated access to courts from access to penal institutions. *Richmond Newspapers*, 448 U.S. at 576 n. 11. And the Ninth Circuit's analysis centers around applying *Pell* to *Press-Enter. II*, but *Pell* predated *Press-Enter. II*, did not frame the analysis for that line of cases, and even upheld restrictions on penal access. And while the Ninth Circuit somewhat touched on its inconsistency with *Holden*, *see Woodford*, 299 F.3d at 875 n. 3, by describing that case as being inconsistent with more recent cases, the Ninth Circuit overlooked how the principles in *Holden* have been reestablished by more recent cases, such as *Houchins*, 438 U.S. at 12–17, *Richmond Newspapers*, 448 U.S. at 576 n. 11, and *Saxbe*, 417 U.S.

at 850. Further, because penitentiaries can constitutionally limit and outright refuse access to their facilities, *ibid.*, there cannot be a right of access something that everyone can be constitutionally excluded from.

*Woodford* and its progeny are irreconcilable with Supreme Court precedent. Plaintiffs are not likely to succeed on their claims and their Motion should be denied.

## 6.  The PLRA precludes Plaintiffs from success on the merits.

The PLRA prevents court involvement in the prison system "unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626. The Court should deny Plaintiffs' Motion because there is no need for an injunction because IDOC's policies comply with the Constitution, and accordingly, any such injunction would be overly broad and overly intrusive.

## 7.  Plaintiffs will not suffer irreparable harm without a preliminary injunction.

Irreparable harm is not satisfied merely because a litigant will be unable to pursue their claims. Instead, the litigant must demonstrate an underlying constitutional violation. *See Powell v. Thomas*, 784 F.Supp.2d 1270, 1283 (M.D. Al. 2011). Here, Plaintiffs cannot establish irreparable harm because IDOC provides witnesses with whatever the Constitution requires.

Plaintiffs' argument on this point is premised on a misunderstanding of what constitutes the "entirety" of an execution. As discussed above, the Ninth Circuit's discussion of "entirety," at most, provides the ability to "view [and hear] the condemned as the guards escort him into the chamber, strap him to the gurney and insert the intravenous lines." *Woodford*, 299 F.3d at 876. Witnesses to IDOC executions are provided all of this access because they have access from the time the inmate is taken into the Preparation Room.

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 19**

Plaintiffs are not entitled to a preliminary injunction because they will not be irreparably harmed absent an injunction.

**8. The balance of equities and public interest weigh against an injunction.**

"Under our Constitution, the question of capital punishment belongs to the people and their representatives, not the courts, to resolve." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019). The Idaho people have determined that those charged with the most heinous crimes deserve capital punishment. And the Idaho people have sentenced various people to death. Plaintiffs seek to preclude IDOC's ability to carry out its lawful, statutory functions because it wants unprecedented access to IDOC's penitentiaries. Plaintiffs seek to enjoin IDOC from carrying out any execution until this entire case can be resolved, which may take years. Providing Plaintiffs an injunction would be against the public's "powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (cleaned up, citation omitted); *Bucklew*, 587 U.S. at 149 ("Both the State and the victims of crime have an important interest in the timely enforcement of a sentence." (citing *Hill v. McDonough*, 547 U.S. 573, 584 (2006)). Providing Plaintiffs an injunction would do nothing but unduly delay potential executions. This would be against the public's interest.

Plaintiffs' argument on this point is, again, premised on a mistaken belief that they possess a First Amendment right to access the Medical Room, which they do not. Because Plaintiffs do not possess such a right, no court has ever concluded that such a right exists, and the Supreme Court has indicated that there is no such right, *Holden*, 137 U.S. at 491; *Houchins*, 438 U.S. at 7–17; *Richmond Newspapers*, 448 U.S. at 576 n. 11, Plaintiffs' Motion should be denied.

CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion.

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 20**

Respectfully submitted this 27th day of December 2024.

MOORE ELIA KRAFT & STACEY, LLP

*/s/ Tanner J. Smith*
Tanner J. Smith
Attorneys for Defendants

OFFICE OF THE ATTORNEY GENERAL

*/s/ Kristina M. Schindele*
Kristina M. Schindele
Deputy Attorney General
Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of December 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Wendy Olson
Anders Pedersen
Stoel Rives, LLP
101 S. Capitol Blvd., Ste. 1900
Boise, Idaho 38702

*Attorneys for Plaintiff*

☐ U.S. Mail, postage prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ Facsimile Transmission
☒ E-Mail: wendy.olseon@stoel.com;
  anders.pedersen@stoel.com

*/s/ Tanner J. Smith*
Tanner J. Smith

**RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION - 21**