RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110, Boise, Idaho 83706
Telephone: (208) 658-2094; Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov; krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756, Boise, Idaho 83707
Telephone: (208) 336-6900; Facsimile: (208) 336-7031
mje@melawfirm.net; tanner@melawfirm.net

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| THE ASSOCIATED PRESS et al., <br><br> Plaintiff, <br><br> vs. <br><br> JOSH TEWALT, <br><br> Defendant. | Case No. 1:24-cv-00587-DKG <br><br> **REPLY IN SUPPORT OF MOTION TO DISMISS** <br> **[Dkt. 11]** |

COMES NOW Defendant, by and through undersigned counsel, and hereby submits his

Reply in Support of Motion to Dismiss as follows:

### INTRODUCTION

Plaintiffs' claim fails as a matter of law. Plaintiffs base their claim on cases finding a right

to witness inmates from when they enter the execution place until they are declared deceased.

**REPLY IN SUPPORT OF MOTION TO DISMISS - 1**

IDOC's processes comply with those requirements because IDOC provides witnesses access to the condemned from the time he is taken to the Preparation Room. Plaintiffs' arguments to the contrary are based on misunderstandings of the cases they cite and oversight of the limitations outlined therein. Regardless, those cases are "clearly irreconcilable" with Supreme Court precedent and the Constitution which allows—and indeed requires—private executions. Further, Plaintiffs' argument about the PLRA is based on inapplicable bodies of law discussing different sections of Code. Plaintiffs' claim also fails because it is a nonjusticiable political question which Plaintiffs lack standing to raise and is not ripe. Plaintiffs' Complaint should be dismissed.

## ARGUMENT

1. **Plaintiffs abandoned their claims for access before and after an execution.**

    Plaintiffs' Complaint seeks access to the Chemical Room before, during, and after executions. (Dkt. 1, ¶¶ 5–6, 35, 57). But the caselaw Plaintiffs base their claims on, at most, only provides access to the condemned during an execution. *California First Amend. Coalition v. Woodford*, 299 F.3d 868, 875–76 (9th Cir. 2002). Plaintiffs do not argue for greater access than is provided under *Woodford* or its progeny. (*See* Dkt. 16). Because Plaintiffs have not argued for greater access, they waived any argument regarding access before or after. Thus, at minimum, Defendant's Motion should be granted as to those issues. *See Versluys v. Weizenbaum*, No. 3:21-cv-01694-MO, 2023 WL 6880412, at *2 (D. Or. Oct. 18, 2023), *aff'd sub nom. Versluys v. White Pine Circle LLC*, No. 23-3982, 2024 WL 5183201 (9th Cir. Dec. 20, 2024) ("Plaintiffs do not respond to this argument and therefore waive it.").

2. **IDOC's processes comply with Ninth Circuit caselaw.**

    The claimed right that Plaintiffs base their suit on is limited to seeing and hearing an inmate in the execution chamber. *Woodford*, 299 F.3d at 877; *First Amend. Coal. of Arizona, Inc. v. Ryan*,

REPLY IN SUPPORT OF MOTION TO DISMISS - 2

938 F.3d 1069, 1075 (9th Cir. 2019). The Ninth Circuit limited its holdings only to access to the condemned in the execution place. *Ibid.* The historical analysis discussed in *Woodford* establishes this. *See Woodford*, 299 F.3d at 875–76. There, the Ninth Circuit explained that it found historical support to: (1) see the inmate "enter the execution place, be attached to the execution device and then die"; (2) witness hangings "in their entirety, from the condemned's ascent up the gallows to the fall of the trap door"; (3) witness lethal gas executions "from the time the condemned was escorted into the gas chamber until pronouncement of death"; and (4) conclude that its historical findings "support" a right "to view the condemned as the guards escort him into the chamber, strap him to the gurney and insert the intravenous lines." *Woodford*, 299 F.3d at 876.

The Ninth Circuit's claimed right is "severely limited." *California First Amend. Coalition v. Calderon*, 150 F.3d 976, 982 (9th Cir. 1998). Neither *Woodford* nor *Ryan* altered this extreme narrowness. Indeed, *Ryan* further clarified that this claimed right does not include a right to examine executions "in minute detail," does not include access to "all information that is 'inextricably intertwined' with executions," and does not "change the default rule that the right of access 'does not extend to every piece of information that conceivably relates to a governmental proceeding.'" *Id.* at 1079–80. These principles were more recently reiterated in *Pizzuto v. Tewalt*, 997 F.3d 893, 906 (9th Cir. 2021), and *Creech v. Tewalt* ("*Creech I*"), 84 F.4th 777, 789–90 (9th Cir. 2023).

Plaintiffs do not address the Ninth Circuit's articulated limitations. Instead, Plaintiffs continue to contort *Woodford* and *Ryan* to stand for propositions inconsistent with their holdings by pulling quotes out of context and overlooking *Calderon*'s, *Woodford*'s, and *Ryan*'s limiting clauses. But if the Court examines the text of the cases Plaintiffs cite, it is clear that their interpretation differs greatly from the cases themselves. Once the full text of those cases is considered, only one conclusion can be made: Plaintiffs' claim is not supported by the law.

**REPLY IN SUPPORT OF MOTION TO DISMISS - 3**

The right created by the Ninth Circuit does not include access to places like IDOC's Chemical Room. At least one federal court has recognized this. *Los Angeles Times Commun., LLC v. Kernan*, No. 18-cv-02146-RS, 2018 WL 10419787, at *3 (N.D. Cal. Aug. 17, 2018). Indeed, the same Chemical Room system was utilized when the Ninth Circuit analyzed IDOC's processes in *Associated Press v. Otter*, 682 F.3d 821 (9th Cir. 2012). Even though the Ninth Circuit analyzed a claim for access to "all stages of the execution," the Ninth Circuit did not require access to the Chemical Room then. *Id*. IDOC's processes comply with the Ninth Circuit's claimed right of access because witnesses have full access to the inmate from when he enters the Preparation Room. Plaintiffs' claim fails as a matter of law for not being cognizable under the First Amendment.

Plaintiffs' argument misconstrues the Ninth Circuit's discussion of initial procedures. Plaintiffs argue that *Woodford*'s discussion encompassed what Plaintiffs seek here by overlooking the context of that case. (Dkt. 16, pp. 24–26). In *Woodford*, California (unlike IDOC) prohibited visual access of the condemned until just moments before the administration of chemical. 299 F.3d at 871. California argued that the portions shielded from view were the "initial execution procedures" and that it provided access to the "execution itself," which it argued "beg[an] when the lethal chemicals start to flow." *Id.* at 876. The court rejected that definition as being California's "own making," and described a history of watching inmates "enter the execution place, be attached to the execution device and then die." *Id.*

The *Woodford* court provided context to what "entirety" means by discussing hangings. *Woodford* explained that witnesses were able to view hangings "in their entirety, from the condemned's ascent up the gallows to the fall of the trap door." *Id*. (quoting *Calderon*, 150 F.3d at 978). Plaintiffs misconstrue this discussion for being what they are asking for here. But that's not the case. IDOC witnesses are provided with full access to the condemned from the moment he is

**REPLY IN SUPPORT OF MOTION TO DISMISS - 4**

brought into the Preparation Room until after he dies. This is akin to watching "from the condemned's ascent up the gallows to the fall of the trap door."

Plaintiffs' argument also misconstrues *Guardian News & Media LLC v. Ryan*, 225 F. Supp. 3d 859 (D. Ariz. 2016), by overlooking that there were two separate issues involved there. Those plaintiffs challenged two things: (1) that they were not alerted when chemical was administered; and (2) that Arizona's director could arbitrarily draw the witness area's curtains and arbitrarily remove witnesses. *Id.* at 869–70. The *Guardian News* court issued separate injunctions on both issues. The court enjoined Arizona from: (a) "conducting lethal injection executions without providing a means for witnesses to be aware of the administration(s) of lethal drugs"; and (b) "invoking Department Order 710–D(F)(5) as currently written to close the viewing of an execution absent the existence of a legitimate penological objective which would merit such closure." *Id.* at 870. Plaintiffs mistakenly rely on the text of the second injunction, conflate that language, and contend it was directed at the first issue. (Dkt. 16, p. 27 (focusing on the "close the viewing" language)). *Guardian News* does not support Plaintiffs' claim here because IDOC complies with the relevant *Guardian News* injunction by verbally alerting witnesses when chemical is administered.

Plaintiffs' historical access argument is unpersuasive. For one, Plaintiffs' argument is not based on the four corners of their complaint and the materials they rely on are not referenced in their complaint. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (Rule 12(b)(6)'s analysis is limited to the complaint). Accordingly, their argument fails under Rule 12(b)(6), and their materials should not be considered for this inquiry.

Notwithstanding, Plaintiffs' argument fails on the merits. Their argument is largely premised on the lack of technological innovation back when states did hangings. But Plaintiffs' argument overlooks how the death penalty has evolved over time in compliance with the Eighth

**REPLY IN SUPPORT OF MOTION TO DISMISS - 5**

Amendment and technological advancements. *See, e.g., Furman v. Georgia*, 408 U.S. 238, 296–97 (1972) (Brennan, J., concurring) (per curiam) (explaining how the public—and Eighth Amendment—reject public executions for being "debasing and brutalizing to us all"). And while Plaintiffs try to analogize the access they seek to seeing an executioner pull a lever during a hanging, their argument overlooks that witnesses are already provided with such access. Witnesses are provided access to everything required under the Constitution because they have access to the condemned from when he is brought into the room where IVs are placed until after he is declared deceased.

Additionally, Plaintiffs' claim about IDOC's Director attesting that verbal notifications will be provided fails and is contrary to the good faith presumed of him. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom Sossamon v. Texas*, 563 U.S. 277 (2011) (government actors exercising official duties are accorded presumption of good faith). Director Tewalt is who determines and approves the steps taken at executions and has sworn under penalty of perjury that IDOC will alert witnesses when chemical is administered.

Plaintiffs' claim fails as a matter of law because IDOC witnesses receive full access.

**3.** ***Woodford*** **and** ***Ryan*** **are irreconcilable with Supreme Court caselaw.**

At least three federal courts agree that the Ninth Circuit's claimed rights in *Woodford* and *Ryan* cannot exist under existing Supreme Court caselaw. *See Oklahoma Observer v. Patton*, 73 F. Supp. 3d 1318 (W.D. Okla. 2014); *BH Media Group, Inc. v. Clarke*, 466 F. Supp. 3d 653 (E.D. Va. 2020), *vacated and remanded on other grounds*, 851 Fed. Appx. 368 (4th Cir. 2021) (unpublished); *Arkansas Times, Inc. v. Norris*, No. 5:07-CV-195 SWW, 2008 WL 110853 (E.D. Ark. Jan. 7, 2008). Plaintiffs have not argued that those courts' analyses are in error.

Plaintiffs' argument overlooks the principles underlying the "clearly irreconcilable" inquiry. Plaintiffs argue that the clearly irreconcilable inquiry is only applicable if the Supreme Court

**REPLY IN SUPPORT OF MOTION TO DISMISS - 6**

had the last word. But their argument overlooks that it is irreconcilability that governs the analysis because the "interpretation of the [Constitution] enunciated by [the Supreme Court] is the supreme law of the land …." *Cooper v. Aaron*, 358 U.S. 1, 18 (1958). The timing of a circuit court's error does not dictate whether that error is irreconcilable with Supreme Court precedent. Where the Supreme Court has spoken, those words control unless and until it says otherwise.

Indeed, because the Supreme Court explicitly differentiated access to prisons from access to courtrooms in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 576 n. 11 (1980)—which limitation is integral to *Richmond Newspapers*' holding, *see U.S. v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010); *see also U.S. v. Roberts*, 710 F. Supp. 3d 658, 673 (D. Alaska 2024)—and the Ninth Circuit used cases such as *Richmond News* to springboard its claimed right in *Woodford*, which conflicts with these limiting characteristics, the Ninth Circuit's analyses are clearly irreconcilable with the Supreme Court precedent it cited. And because the at-issue cases involve constitutional issues, the "clearly irreconcilable" inquiry is "at its weakest" here. *See Agostini v. Felton*, 521 U.S. 203, 235 (1997) (stare decisis is at its weakest when interpreting the Constitution).

While executions used to be public spectacles, today public executions are rejected under the Eighth Amendment for being "debasing and brutalizing to us all." *Furman*, 408 U.S. at 297 (Brennan, J., concurring). Public executions violate the Eighth Amendment's evolving standards of decency. *See id.*; *see also Campbell v. Wood*, 18 F.3d 662, 701–02 (9th Cir. 1994) (public no longer considers executions "as any cause for celebration or an occasion for civic festivities or public gatherings"; viewing condemned's corpse even violates Constitution) (concurrence and dissent)); *Otter*, 682 F.3d at 824 (limited witness executions even offend dignity of inmates and sensibilities of their families and other inmates). The result is the same under Article I, Section 6 of Idaho's Constitution. The First Amendment does not dictate otherwise. *See Pizzuto*, 997 F.3d at

**REPLY IN SUPPORT OF MOTION TO DISMISS - 7**

906 (it would be "implausible" for a First Amendment right of access to include a right to record executions). Executions have evolved into "private affairs," *id.* at 340 (Marshall, J., concurring), which all people can constitutionally be excluded from witnessing. *E.g., Houchins v. KQED, Inc.*, 438 U.S. 1, 13 (1978). The Ninth Circuit's analysis fails to appreciate the Eighth Amendment's evolving standards of decency's role in executions when it relied on types of executions that are not constitutional today. But that constitutional interplay must be considered.

Because of this, the matters raised in Defendant's prior briefing, and those in the cases referenced at the beginning of this section, the Ninth Circuit's holdings in *Woodford* and its progeny are clearly irreconcilable with Supreme Court precedent.

### 4. Plaintiffs' claim is not justiciable.

Plaintiffs' claim is too speculative to be considered justiciable because there is no execution scheduled and no IDOC inmate with a pending death warrant. Further, IDOC has complied with whatever the Constitution requires because its processes comply with circuit caselaw. Accordingly, Plaintiffs lack an injury to support standing. And because Plaintiffs' claim is contingent on future events that may never occur, and ripeness's prudential aspects are amplified when dealing with First Amendment issues, *see Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002), Plaintiffs' claim is not ripe.

Plaintiffs' argument is unpersuasive. Plaintiffs argue that because Idaho has issued death warrants in the past, their injury is concrete. But this argument fails to appreciate that the two IDOC inmates who have exhausted their post-conviction challenges have stays of execution in place. It is not up to IDOC or the State to lift these stays; it is up to the Federal Courts—who may never do so. While IDOC is statutorily obligated to carry out these lawful sentences, the ability to do so may never come to fruition.

**REPLY IN SUPPORT OF MOTION TO DISMISS - 8**

Plaintiffs also argue that the timeframe of a death warrant imposes an "impossible time constraint" for their claim to be heard. But real-life execution-related challenges negate that claim. For example, last year after Creech received a death warrant, he moved for a preliminary injunction twenty-two days before his scheduled execution. *See Creech v. Tewalt, et al.* ("*Creech II*"), 1:20-cv-114-GMS, Dkt. 123. The court there was able to decide the issues involved, *id.* at Dkt. 142, the Ninth Circuit was able to decide the appeal of which, *Creech v. Tewalt* ("*Creech III*"), 94 F.4th 859 (9th Cir. 2024), and the Supreme Court was able to consider and reject Creech's petition for certiorari, *Creech v. Tewalt* ("*Creech IV*"), 144 S. Ct. 1027 (2024). Waiting for this case to become justiciable, if it can, does not impose impossible time limits and is required by the Constitution.

Plaintiff's claim is not justiciable for lacking ripeness and standing.

**5. The needs-narrowness-intrusiveness test applies here.**

The needs-narrowness-intrusiveness test is codified in 18 U.S.C. § 3626(a)(1)(A). The test applies when there is "[p]rospective relief in any civil action with respect to prison conditions …." *Id.* "Prospective relief" is defined as "all relief other than compensatory monetary damages." *Id.* § 3626(g)(7). "Civil action with respect to prison conditions" means "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison." *Id.* § 3626(g)(2).

Section 3626 applies here. Plaintiffs seek equitable relief. (Dkt. 1, p. 13). Plaintiffs' claim directly implicates "the effects of actions by government officials on the lives of persons confined in prison" because success on their claim would necessarily involve changing IDOC's execution processes. Indeed, IDOC inmates filed similar challenges to other parts of the process just a few years ago. *See Creech I*, 84 F.4th at 789–90.

**REPLY IN SUPPORT OF MOTION TO DISMISS - 9**

Plaintiffs' claim to the contrary is directed at the wrong sections of Code. Plaintiffs do not cite cases discussing 18 U.S.C. § 3626. Rather, they cite cases discussing 28 U.S.C. § 1915A's screening requirements, 42 U.S.C. § 1997e's exhaustion requirements, and 28 U.S.C. § 1915's availability of in forma pauperis status for prisoners. The fault in Plaintiffs' argument is that those provisions do not apply to § 3626 and include textual limitations qualifying applicability to prisoners. *See* 28 U.S.C. § 1915A(a), 42 U.S.C. § 1997e(a), 28 U.S.C. § 1915(a)(2). Section 3626 does not include a "prisoner" limitation; instead, it applies broadly to "any civil action."

Further, Plaintiffs' argument implies that non-inmate litigants are held to lesser standards when raising challenges that affect inmates than the inmates themselves. This would be contrary to the prohibition against prison micromanagement under the PLRA. *See Balla v. Idaho State Bd. of Correction*, No. 1:81-cv-1165-BLW, 2020 WL 2812564, at *6 (D. Idaho May 30, 2020).

The needs-narrowness-intrusiveness test applies to Plaintiffs' claim.

**6. Plaintiffs' claim concerns political questions.**

Determining access to penal institutions is a matter for state legislative and executive departments. *E.g., Richmond Newspapers*, 448 U.S. at 576 n. 11. Idaho has constitutionally vested this decision-making power in the Legislature who, in turn, gave it to IDOC's Director. Idaho Const. Art. X, § 5; I.C. § 19-2716. This matter is non-justiciable because it is a request for the Court to intertwine itself in the political determinations of deciding where the public is allowed access to beyond what is constitutionally required.

## CONCLUSION

Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint.

**REPLY IN SUPPORT OF MOTION TO DISMISS - 10**

Respectfully submitted this 24th day of January, 2025.

        MOORE ELIA KRAFT & STACEY, LLP

        */s/ Tanner J. Smith*
        Tanner J. Smith
        Attorneys for Defendants

        OFFICE OF THE ATTORNEY GENERAL

        */s/ Kristina M. Schindele*
        Kristina M. Schindele
        Deputy Attorney General
        Attorneys for Defendants

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 24th day of January, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Wendy Olson<br>Anders Pedersen<br>Stoel Rives, LLP<br>101 S. Capitol Blvd., Ste. 1900<br>Boise, Idaho 38702<br><br>*Attorneys for Plaintiff* | ☐ U.S. Mail, postage prepaid<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Facsimile Transmission<br>☒ E-Mail: wendy.olson@stoel.com;<br>anders.pedersen@stoel.com |

        */s/ Tanner J. Smith*
        Tanner J. Smith

**REPLY IN SUPPORT OF MOTION TO DISMISS - 11**